Lingo vs. Miller & Hill.

ELAM, for plaintiff in error.

OLIVER & CLEMENTS, for defendant in error.

---

JOHN R. T. LINGO, plaintiff in error, *vs.* MILLER & HILL, defendants in error.

When a slave is indicted, the master is not bound to employ lawyers, to assist in the slave's defence.

Complaint, in Marion. Tried before Judge WORRILL, March Term, 1857.

This was an action by Miller & Hill, attorneys at law, against John R. T. Lingo, for the recovery of two hundred dollars, charged by plaintiffs for professional services rendered in the defence of a negro slave belonging to defendant, who was tried in Marion Superior Court for the crime of arson.

Annexed to the declaration, which was an account, in the form prescribed by the Act of 1847, was a bill of particulars.

The defendant pleaded, 1st, the general issue. 2d, that the services were rendered voluntarily and without the authority of defendant.

Upon the trial, the following facts were, upon agreement, submitted to the jury, to-wit:

At the March Term, 1856, of Marion Superior Court, the grand.jury found a true bill against a negro slave named Jim, alias James, the property of defendant, for the offence of arson. That said slave was tried at that term of the Court, and acquitted. That plaintiffs, Miller & Hill, defended him; that to defend successfully such a case, was reasonably worth four or five hundred dollars. It was further agreed and admitted that Lingo, the defendant, knew that his slave was indicted for said crime, and refused to defend him or employ counsel for his defence, and that plaintiffs, without any contract with Lingo, did defend said slave, after Lingo had refused to employ counsel; that Lingo was not present at the trial, but after he was acquitted, took him off and sold him. It was further agreed and admitted, that Lingo was fully able to have employed and paid counsel.

The presiding Judge, charged the jury that if they believed from the evidence, that the services were rendered by plaintiffs, then they were entitled to recover what their services were reasonably worth, not exceeding the amount laid in their declaration.

He further charged, that notwithstanding Lingo refused to defend his slave, and to employ counsel, yet there was a legal obligation resting upon the master so to do, arising out of the relation of master and servant, and if the master refused to defend his slave, any attorney might defend him, and the master would be compelled to pay whatever the services were reasonably worth; that the master cannot divest himself of this obligation at his will, and if they believed that the services rendered were worth two hundred dollars, they must find for the plaintiffs, that amount.

To which charge of the Court, defendant excepted.

The jury found for the plaintiffs, two hundred dollars, whereupon defendant's counsel tenders his bill of exceptions, and alleges error in the charge aforesaid.

G. O. DAVIS, for plaintiff in error.

BLANDFORD & CRAWFORD, and W. D. ELAM, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the charge right? This involves the question, whether, if the slave is indicted, the master is bound to furnish him with lawyers to assist him in his defence?

We do not know of any law that imposes such an obligation, upon the master. And it is incumbent on those who insist on the existence of an obligation, to show, that there is something to create the obligation.

There are laws that impose various obligations on the master, but the obligation in question is not among them. See *13th div. 12th sec., Penal Code*; 41*st sec. of the act of* 1770, amendatory of the patrol act; the act of 1815, "to compel owners of old or infirm slaves to maintain them." *Cobb Dig.,* 827. 981. 987. And *expressio unius est exclusio alterius.*

No such obligation mentioned among those imposed by statute on the masters of *hired* servants, or apprentices,

whether white, or black.    See 3d section of the act of 1796, "for the government of servants, not slaves, imported or migrating into this State." *Id* 961.    This is an act of some general interest at this time, when the question of supplying the tropics with apprenticed Africans and Asiatics, is receiving so much attention.    *Id.* 985.

Nor does it seem, that there is any great need, that such an obligation as this, should be imposed on the master. *Every* master has an interest to prevent his slave from being punished, an interest that increases with the increase of the punishment to which, the slave is exposed.    *Nearly* every master, together with nearly every member of his family, has also an affection for his slave.

This being so, it may be pretty safely assumed, that if in any case, the master refuses to employ lawyers for his slave, the case is one in which the master ought not to be required to employ them.' It may be pretty safely assumed that every such case will be a case in which the master, a juror biased, by both interest and affection, to acquit, has convicted.

We think, that the charge in this case, was erroneous, and therefore, that there ought to be a new trial.

Judgment reversed.